UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **James B. McDevitt,** | : |
| **Plaintiff,** | : Civil Action No. |
| v. | : Jury Trial Demanded |
| **PNC Bank,** | : |
| **Defendant.** | : |

# COMPLAINT

Plaintiff, by his undersigned counsel, brings this action seeking relief from the employment discrimination of defendant PNC Bank ("PNC"), and makes the following allegations.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction to hear this Complaint and adjudicate the claims stated herein under 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 2000d-2, 2000e-5(f), this action being brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000d and 2000e *et seq*., and the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991) to redress and enjoin the discriminatory practices of PNC.  This Court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

2.      Plaintiff timely filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations

Commission ("PHRC"), received a Notice of Right to Sue letter from the EEOC, and has commenced this action within 90 days of receipt of said letter.

3. Venue is proper in the Eastern District of Pennsylvania by reason of 28 U.S.C. § 1391(b) because a substantial number of the acts and omissions that give rise to this Complaint occurred in this district.

## PARTIES

4. Plaintiff James B. McDevitt is a Caucasian resident of this judicial district. Mr. McDevitt began working at PNC on March 17, 2008 as a Senior Financial Consultant. He was constructively discharged because of his race on May 23, 2009.

5. Defendant PNC Bank is a financial services organization with a principal place of business in Philadelphia, Pennsylvania. Plaintiff worked at PNC's office at 11830 Bustleton Avenue, Philadelphia PA 19124. At all times relevant hereto, PNC has had more than 500 employees. The acts set forth in this Complaint were authorized, ordered, condoned and/or done by PNC's officers, agents, employees and/or representatives while actively engaged in the management of PNC's business.

## FACTS

6. Plaintiff was hired by PNC on March 17, 2008 as a Senior Financial Consultant and consistently performed his job with the highest level of integrity.

7. Plaintiff's supervisor was Robert Hall, an African-American and PNC's Regional Sales Manager. Hall discriminated against Plaintiff because of his race during his employment with PNC, some example of which are described herein.

8. When Plaintiff was hired, Hall told him that he would be assigned to PNC's Rittenhouse Square branch, a prime location because PNC clients that frequented

that branch generally were at a higher income bracket and were regular investors. Instead, Hall assigned Plaintiff to PNC's North Philadelphia branch, which was a less desirable location because PNC clients that frequented that location generally were at a lower income bracket and were not regular investors. Hall moved Calvin Thompson, a Black Senior Financial Consultant, from PNC's North Philadelphia location to a more desirable location in center city Philadelphia twice within a six-month period, allowed Thompson to take all of his accounts with him, and placed Plaintiff in Thompson's former location. PNC hired two Senior Financial Consultants to fill Thompson's vacancies.

        9.      PNC hired Nieda Mathis, a Black Senior Financial Consultant, after Plaintiff was hired and placed her in a desirable location at 4th & Market Street, Philadelphia. Plaintiff previously had asked Hall to place him at that location when it had become vacant before Mathis was hired. Hall claimed that Plaintiff could not be transferred to that location because PNC rules allegedly required that he serve at least one (1) year at this then current location before he could be transferred. This explanation did not appear to be credible because Plaintiff had 12 years experience in the securities filed whereas Mathis had at most 2 ½ years experience in the securities field. Plaintiff complained to Hall, Hall's direct supervisors, and Sally Weinkam, PNC Human Resources, about this treatment. However, no action was taken. Because of poor performance, Hall transferred Mathis to PNC's North Philadelphia location after only 5 months.

        10.      Plaintiff sought a transfer to PNC's Bensalem location, and the transfer was almost finalized, but Hall stopped the transfer before it could become effective. Hall

berated Plaintiff for attempting to seek a transfer and criticized Plaintiff for allegedly being disloyal.

11. Plaintiff later learned that there was a vacant Senior Financial Consultant position available at PNC's Somerton, Pennsylvania location. Because of his prior experiences with Hall and his direct supervisors' lack of supervision over him, Hall's blatant lack of compliance with relevant securities laws, the sales practices of Hall and his supervisor, and Hall's attempts to have Plaintiff make various trades that he did not want to make, when he sought a transfer, Plaintiff hired an attorney. Plaintiff's attorney wrote to PNC concerning how Hall had prevented Plaintiff from transferring to the Bensalem location and was successful in getting Plaintiff assigned to the Somerton location. However, Hall refused to allow Plaintiff to take all of his existing accounts with him, granting him permission to take only 20 accounts. In contrast, Hall had permitted Thompson to take approximately 400 accounts with him when he transferred from the North Philadelphia location to the Center City locations.

12. Hall also improperly notified Plaintiff's clients of his transfer to the Somerton location, which caused a number of Plaintiff's clients to become angry because they could not contact Plaintiff and missed trades at a time in March/April and May 2008 when there were beneficial opportunities to do so. As a result of Hall's actions, Plaintiff was impelled to contact the SEC to ensure that he was not charged with failing to appropriately handle the concerns of his clients. Hall then attempted to blemish Plaintiff's securities license by lodging these client concerns as complaints.

13. Hall inappropriately reassigned accounts out of Plaintiff's book of business and assigned other accounts into Plaintiff's book of business without notifying

Plaintiff. Hall also changed Plaintiff's phone number on his trade confirmation slips, which resulted in Plaintiff missing calls from clients and clients missing trades.

14.   Hall intentionally failed to give Plaintiff appropriate credit for commissions on sales while Plaintiff worked in the North Philadelphia location. Some of the commissions on those sales were credited to Thompson because most of the accounts in Plaintiff's territory at the time were being maintained under Thompson's representative number. Hall told Plaintiff that he would put those accounts under Plaintiff's representative number, but manually credited half of the sales to Thompson, resulting in a loss to Plaintiff of approximately $10,000 - $15,000 in commissions.

15.   PNC has an internal complaint process in which employees can complain to Human Resources about employment decisions. This process, however, consists of HR giving lip service to investigating complaints and then invariably finding that discrimination has not occurred. Such was the case with respect to complaints that Plaintiff made to Weinkam about the treatment he received from Hall.

16.   By reason of PNC's discriminatory employment practices, Plaintiff suffered extreme harm, including emotional distress and mental anguish, loss of compensation, wages, back and front pay, bonuses, and other employment benefits.

17.   PNC acted, and failed to act, with reckless disregard for Plaintiff's federally protected rights.

18.   Plaintiff demands a trial by jury of all issues so triable, and an award of front pay and back pay, prejudgment interest, attorneys' fees, costs, and expenses and whatever other equitable relief the Court deems proper.

*Count I*

<u>Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e</u>

19. Plaintiff restates and realleges paragraphs 1- 18, inclusive, as though set forth here in full.

20. PNC has discriminated against Plaintiff with respect to the terms and conditions of his employment because of his race in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991.

21. PNC's conduct was intentional, deliberate, willful and conducted in callous disregard of Plaintiff's rights.

22. By reason of PNC's discrimination, Plaintiff is entitled to all legal and equitable remedies available under section 2000e.

*Count II*

<u>Pennsylvania Human Relations Act, 43 P.S. §§ 951-963</u>

23. Plaintiff restates and realleges paragraphs 1-18, inclusive, as though set forth here in full.

24. PNC discriminated against Plaintiff because of his race with respect to the terms and conditions of his employment with defendant in violation of Sections 5(a), 5(b) and 5(d) of the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963.

25. PNC's conduct was intentional, deliberate, willful and conducted in callous disregard of Plaintiff's rights.

26. By reason of PNC's discrimination, Plaintiff is entitled to all legal and equitable remedies available under Section 9 of the PHRA.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, James B. McDevitt, respectfully prays that the Court:

a. enter judgment in favor of Plaintiff and against PNC for all available remedies and damages under Title VII and the PHRA, including, but not limited to, back pay, front pay, and past and future mental anguish and pain and suffering in amounts to be determined at trial;

b. order PNC to pay punitive damages to Plaintiff under Title VII in an amount to be determined at trial;

c. order PNC to pay the attorneys' fees, costs and expenses and expert witness fees of Plaintiff associated with this action;

d. grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable; and

e. retain jurisdiction until such time as the Court is satisfied that PNC has remedied the unlawful and illegal practices complained of herein and is determined to be in full compliance with the law.

Dated: June __, 2010

                                                                                       _____
Robert T Vance Jr (RTV3988)
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 1530
Philadelphia PA 19110
215 557 9550
215 557 9552 f
rvance@vancelf.com

*Attorney for James B. McDevitt*